IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

KURT A. AND CHARLENE GOODREAU,

    Appellants/Debtors,                                     OPINION AND ORDER

    v.                                                          14-cv-093-wmc

MICHAEL E. KEPLER,

    Appellee/Trustee.
_____

    Kurt A. and Charlene Goodreau appeal from an opinion and order of the Bankruptcy court for the Western District of Wisconsin, which dismissed their petition for Chapter Seven bankruptcy protection.[1] The appeal turns on the Goodreaus' assertion that their Prudential Financial stock constitutes a "depository account" within the meaning of Wis. Stat. § 815.18(3)(k), and thus are exempt from execution. The bankruptcy court disagreed, disallowing the exemption. For the reasons set forth below, this court agrees and will affirm the bankruptcy court's holding.

BACKGROUND

    The material facts of the case are essentially undisputed here. On April 11, 2013, appellant-debtors Kurt A. and Charlene Goodreau filed a Chapter 7 bankruptcy petition in the Western District of Wisconsin. Appellee-trustee Michael E. Kepler was appointed Chapter 7 Bankruptcy Trustee. The Goodreaus disclosed 65 shares of Prudential Financial stock, which they claimed were exempt as a "depository account" under Wis.

---

[1] This court has jurisdiction to hear the appeal under 28 U.S.C. § 158(a)(1).

Stat. § 815.18(3)(k). The Trustee timely objected to the Goodreaus' claim, arguing that these shares were not exempt as a depository account under the statute.

On July 15, 2013, the bankruptcy court held a hearing on this question. The Goodreaus represented that they received the shares as a "thank-you" for their business with Prudential Insurance Co. Computershare Trust Company, N.A.[2] ("Computershare"), and there appears to be no dispute that the shares are held by Computershare in a "stock account" in book entry form.

Though certificates certifying stock ownership are not required, stockholders like the Goodreaus can obtain such certificates via Computershare. They can sell their stock online, via telephone, or by mail, or they can transfer the stock to a brokerage account. Computershare will handle any sale, deduct fees from the sales proceeds and then send a check for the net proceeds to the stockholder. The Goodreaus' redemption rights are, however, subject to at least one significant limitation: stockholders can only withdraw an amount from the account equal to the net proceeds of the sale of a specified number of shares of stock.

On December 27, 2013, the bankruptcy court issued an order sustaining the Trustee's objection to the claimed exemption. The court held that the stock account did not qualify as a depository account for three reasons. First, the court found that a stock account was not specifically enumerated in the definition of "depository account" contained in Wis. Stat. § 815.18(2)(a). Second, it found that a stock account did not

---

[2] "N.A." stands for "National Association," which is a national bank "incorporated under federal law and governed by a charter approved by the Comptroller of the Currency." *Black's Law Dictionary* 165 (9th ed. 2009).

qualify as a "share account" within the meaning of the statue. Third, the court found that a stock account was not sufficiently similar to accounts listed in § 815.18(2)(a) to qualify as a "like account."

## OPINION

### I. Internet Research

As a preliminary matter, the Goodreaus assert that the bankruptcy court abused its discretion in conducting independent internet research. While this evidentiary issue has received deserved attention by courts and commentators, it merits little discussion here, since the *material* facts as set forth above are not in dispute. Moreover, whatever the outside limits may or should be on such research, there is little doubt that courts may conduct outside research if they use the facts discovered to provide context. *See Johnson v. United States*, 780 F.2d 902, 910 (11th Cir. 1986); *see also* Elizabeth G. Thornburg, *The Lure of the Internet and Limits on Judicial Fact Research*, 38 No. 4 Litigation 41, 45-46 (2012).

Here, the bankruptcy court stated that it was merely attempting to familiarize itself with Prudential's financial products generally to gain a fuller picture. There being *nothing* in the record to suggest otherwise, this court will take the bankruptcy court at its word. Furthermore, the research the bankruptcy court conducted does not appear to have affected the outcome in any way. For example, while the Goodreaus argue that the bankruptcy court "created" an ambiguity as to the proper interpretation of "share account" through its outside research, that ambiguity existed with or without the bankruptcy court's independent research. *See* discussion, *infra*, at 4.

The only criticism arguably going to the "facts of record" is the Goodreaus' claim that the bankruptcy court erred by researching the wrong type of account. Even assuming this to be true, the error has no bearing on the outcome of this case. Whether the bankruptcy court researched a money market account or money market fund did not affect that court's conclusion that the Goodreaus' stock account is not similar to a share account under Wis. Stat. § 815.18(2)(e). Nor does it play any role in this court's express reasons for its decision.

## II.     Claimed Exception

On appeal, this court generally reviews the bankruptcy court's factual findings for abuse of discretion and legal conclusions *de novo*. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). Wisconsin debtors are expressly authorized to exempt certain specific property from bankruptcy discharge by state statute. Among the recognized exemptions is "[t]he debtor's interest in or right to receive ... depository accounts in the aggregate value of $5,000, but only to the extent that the account is for the debtor's personal use and is not used as a business account." Wis. Stat. § 815.18(3)(k). Wisconsin Statutes further state that:

> "Depository account" means a certificate of deposit, demand, negotiated order of withdrawal, savings, share, time or like account maintained with a bank, credit union, insurance company, savings and loan association, securities broker or dealer or like organization. "Depository account" does not include a safe deposit box or property deposited in a safe deposit box.

Wis. Stat. § 815.18(2)(e).

Since neither party disputes the bankruptcy court's finding that Computershare qualifies as a "bank" under § 815.18(2)(e), the only question before this court is whether

4

the Goodreaus' stock account with Computershare constitutes a "certificate of deposit, demand, negotiated order of withdrawal, savings, share, time or like account" under the statute.

### A. Statutory Interpretation

Consistent with Wisconsin Statutes, courts construe listed exemptions under § 815.18 broadly in favor of debtors.[3] Wis. Stat. § 815.18(1); *see, e.g.*, *In re Bork*, 389 B.R. 823 (Bankr. E.D. Wis 2008). While these exemptions are to be construed broadly, however, courts are not free to create exemptions that the Wisconsin Legislature has not articulated. *In re Geise*, 992 F.2d 651, 656 (7th Cir. 1993) ("Legislation creating exemptions in favor of a debtor must be liberally construed . . . Nevertheless, this general principle of liberal construction cannot be employed to write exemptions into statutes.").

When interpreting statutes, the starting point of the analysis is the plain language of the statute itself. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *State ex rel. Kalal v. Circuit Ct. for Dane Cty.*, 2004 WI 58 ¶ 45, 271 Wis. 2d 633, 681 M.W.2d 110. If the language of the statute is unambiguous on its face, the court must enforce the statute according to its terms, provided doing so would not "frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). If, on the other hand, the statute is ambiguous, the court may look to legislative history to aid in

---

[3] Wis. Stat. § 815.18(1) provides: "This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges."

determining its meaning.  *See Lamie v. U.S. Trustee*, 540 U.S. 526, 526-527 (2004); *United States v. Kimberlin*, 781 F.2d 1247, 1253 (7th Cir. 1985).  A statute is ambiguous when reasonable minds could differ as to its interpretation.  *River Road Hotel Partners, LLC. v. Amalgamated Bank*, 651 F.3d 642, 649-50 (7th Cir. 2011); *Kalal,* 2004 WI 588, ¶ 47.

B. "Share Accounts"

The Goodreaus contend that their stock account is plainly a "share account" within the meaning of § 815.18(2)(e).  Indeed, in their reply brief, the Goodreaus baldly state that Wis. Stat. § 815.18(2)(e) is unambiguous on its face and encompasses their Prudential stock.  In doing so, they attempt to define "share account" by arguing that a common definition of a "share" is "[a] unit of stock representing ownership in a corporation."  *Black's Law Dictionary* 1233 (5th ed. 1979).  Under this reading, the Goodreaus argue, a "share account" must, therefore, encompass stock accounts within the meaning of Wis. Stat. § 815.18(2)(e).

Unfortunately for the Goodreaus, there is nothing plain about the meaning of the phrase "share account," particularly given the context in which it is being used.  *Holloway v. United States*, 526 U.S. 1, 7 (1999) ("the meaning of statutory language, plain or not, depends on context"); *Kalal,* 2004 WI 588, ¶ 46 ("Context is important to meaning … Therefore, statutory language is interpreted in the context in which it is used[.]").  *Within the banking context*, the trustee argues that "share accounts" are not stock accounts, but are instead defined more narrowly as a type of account maintained at a credit union, offering another plausible interpretation of the phrase that the Goodreaus claim is unambiguous.

Purely on its face, Section 815.18 does nothing to resolve these alternative interpretations. The statute does not define "share," much less "share account." Thus, the court is left with two possible interpretations of Section 815.18(2)(e): one that reads Subsection (2)(e) broadly, encompassing stock accounts as "share" or "like" accounts by virtue of the ordinary meaning of "share"; and one that reads it more narrowly in light of its context, excluding stock accounts from the intended meaning of "share" accounts. Because reasonable minds could differ on this question, the court rejects the Goodreaus' argument that the statute is unambiguous.

Furthermore, given the context of the statute, the court agrees that the trustee has the better argument. As the trustee points out, in the banking context, a share account is synonymous with a "share-draft account." *See Black's Law Dictionary* 1500 (9th ed. 2009). A share draft account is defined in turn as "an account that a member maintains at a credit union and that can be drawn on through the use of share drafts payable to third parties." *Black's, supra,* at 21. Further, "a share-draft account operates much like a checking account operates at a bank." *Id*. In contrast, the court could find no mention of stocks in any definition of "share account" or "share-draft account."

The other types of accounts enumerated in the statute also support the bankruptcy court's conclusion that the Wisconsin Legislature did not intend "a share account" to encompass a stock account like the one in this case. As noted above, "depository accounts" under the Wisconsin Statute generally include not only "share accounts" but also savings accounts, demand accounts, and time accounts. *See Black's, supra,* at 20. Each deals with cash or cash-equivalents and provides account holders with

instant access to funds as needed. Negotiated order of withdrawal ("NOW accounts") operate very similarly as interest-bearing savings accounts on which the holder may write checks. *Black's, supra,* at 21. Certificates of deposit ("CDs") also function like time and savings accounts, although they include a fixed-term of deposit and restriction on early withdrawal in the form of a penalty in exchange for a higher interest rate. Importantly, just as with funds contained in other depository accounts, funds in a CD are also readily accessible. As a whole then, "share accounts" and "like accounts" provide readily accessible funds in cash or cash-equivalents.

While the Goodreaus do point out a few similarities between stock accounts and the accounts encompassed within § 815.18(2)(e)'s definition of "depository accounts," most financial accounts have *some* shared characteristics, however minor. The most relevant characteristics for the court's present purposes are those consistent with the express purpose of the Wisconsin Legislature in enacting exemptions: "preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges." Wis. Stat. § 815.18(1). Thus, the court finds most persuasive the fact that the accounts exempted by Section 815.18(2)(e) are cash or cash equivalents, providing readily accessible sources of funds for the purposes of "sustain[ing] life" during bankruptcy.

Unlike those enumerated accounts, stocks are not cash or cash-equivalents, and stock accounts require liquidation of stock before any funds can be withdrawn. Stock accounts are often held as investments that may at some point *supplement* funds held in the types of accounts listed in § 815.18(2)(e), but do not serve as such accounts

themselves. For example, money is not typically withdrawn from stock accounts as one might with checking or savings accounts. Furthermore, the financial risk of loss present in any account listed by the legislature in Section 815.18(2)(e) is effectively zero compared to the risk that stock accounts present due to market volatility. Even if stock accounts are somewhat similar to the accounts listed in § 815.18(2)(e) in some ways, they are not similar in their basic purpose and fundamental characteristics.

While neither side could point to helpful Wisconsin law on the precise meaning of "share accounts," other states have distinguished between "share" accounts and stock accounts in much the same way as the bankruptcy court did here. For instance, Iowa, the only other state to include the word "share" in its exemption statute, explicitly lists "cash on hand, bank deposits, *credit union share drafts*, or other deposits" from execution. Iowa Code § 627.6(14) (2013) (emphasis added). Admittedly, Iowa used more specific terminology than Wisconsin, but generally, it appears that "credit union share drafts" runs parallel to the "share" accounts exempted in Wisconsin and is consistent with Black's Law Dictionary's definition of "share accounts" as synonymous with "share drafts." Iowa's placement of "credit union share drafts" beside "cash on hand" and "bank deposits" strongly suggests that Iowa, like Wisconsin, was seeking to exempt cash and accounts that act as cash equivalents. Like Iowa, Wisconsin has also included "share" accounts within the same statute exempting accounts that are cash equivalents and operate as deposit accounts.

Conversely, the State of Washington expressly provides that "bank accounts, savings and loan accounts, *stocks, bonds, or other securities*" are exempt. Wash. Rev. Code

9

§ 6.15.010 (2012) (emphasis added). Washington's specific exemption of stocks further suggests the Wisconsin Legislature's intent was not to exempt stock accounts. By explicitly including "stocks, bonds, or other securities" in the exemption, listing them independently from accounts that operate similarly to those listed in the Iowa and Wisconsin statutes, Washington expressly distinguished between stock accounts and "depository accounts." Such a distinction highlights the inherent differences between a "stock account" and a "share" account and supports a finding that the Wisconsin Legislature did not intend to include "stock accounts" within its definition of "share" accounts for the purposes of § 815.18(2)(e).

Finally, the legislative history of Wis. Stat. § 815.18 supports the bankruptcy court's interpretation. *See Kalal,* 2004 WI 588, ¶ 51. Originally, the statute provided only that "savings accounts" at "savings and loan associations, banks, and credit unions" were exempt. Wis. Stat. § 815.18(22) (1987-88). In 1989, the Wisconsin Legislature repealed and recreated the statute in its current form. Based upon the types of accounts and organizations it added, it appears that the legislature was not trying to fundamentally broaden the *nature* of the accounts that could be exempted, but rather update the terminology to reflect evolving banking practices that included new types of accounts and a wider range of institutions providing such accounts to clients. *Cf. In re Erickson,* 815 F.2d 1090, 1092, 95 (7th Cir. 1987) (stating evolutions in technology and language required "legislative attention" to modify subsection of § 815.18 exempting certain farm animals and equipment.) As the bankruptcy court observed, the Wisconsin Legislature would have presumably provided some comment had it intended to

significantly *broaden* the exemption to include stocks (and potentially other securities) using the language it did in § 815.18(2)(e).  *See In re Goodreau*, No. 13-11713, 2013 WL 6860761 at *4 (Bankr. W.D. Wis. December 27, 2013).  Without any such evidence, this court cannot simply read stock accounts into the definition of "share" accounts under § 815.18 (2)(e).

The distinction between cash or cash-equivalents and liquid assets is an important one in bankruptcy law.  "A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors.  Exemption of property . . . lets the debtor *maintain an appropriate standard of living* as he or she goes forward after the bankruptcy case."  4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶522.01 (16th ed. 2014) (emphasis added); see also 1 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy §6.01[A]* (6th ed. 2012) (exemptions liberally construed to protect debtor's fresh start and protect "debtor's family against being left destitute").  A limited amount of cash on hand serves these purposes, and it serves the purpose of ensuring debtors can "sustain[] life" and "avoid becoming public charges," Wis. Stat. §815.18(1).  An asset like a share of stock, which is "tied up" as an investment, does not tend to serve those same purposes.

### C.  "Like Accounts"

The Goodreaus alternatively seek to characterize their stock account as a "like account," arguing that it shares enough similarities with those accounts expressly listed in the statute to fall within this catch-all provision.  Ultimately, the Goodreaus rely on the same principals as they did when arguing that "share" accounts embrace "stock

accounts." For the same reasons, the court finds those arguments unpersuasive.

Even construing § 815.18 broadly, the court cannot write into the statute exemptions not intended by the Wisconsin Legislature. As a result, the court will affirm with the bankruptcy court's holding that the Goodreaus shares of Prudential Financial stock are not exempted from Chapter 7 bankruptcy proceedings as a "depository account" under § 815.18.

ORDER

IT IS ORDERED that the judgment of the bankruptcy court is AFFIRMED.

Entered this 24th day of September, 2014.

BY THE COURT:

/s/

_____
William M. Conley
District Judge